UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANK J. ARCADI,

                    Plaintiff,                          **Hon. Hugh B. Scott**

          v.                                            **18CV798**

                                                        **CONSENT**

ANDREW SAUL, COMMISSIONER,                              **Order**

                    Defendant.

          Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 11 (plaintiff), 14 (defendant Commissioner)).   Having considered the

Administrative Record, filed as Docket No. 6 (references noted as "[R. __]"), and the papers of

both sides, this Court reaches the following decision.

## INTRODUCTION

          This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to Supplemental Security Income benefits.   The parties consented to proceed before a

Magistrate Judge (Docket No. 16, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

          The plaintiff ("Frank Arcadi" or "plaintiff") filed an application for disability insurance

benefits on June 15, 2010 [R. 778, 38].   That application was denied initially.   The plaintiff

appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and

concluded, in a written decision dated February 22, 2012, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 38, 924]. The ALJ's decision became the final decision of the Commissioner on July 8, 2013, when the Appeals Council denied plaintiff's request for review [R. 1, 918]. Plaintiff then sought judicial review, Arcadi v. Colvin, No. 13CV734. On March 19, 2014, this Court entered judgment consistent with the stipulation to remand this matter, Arcadi, supra, Nos. 14 (Stipulation), 17 (Judgment) [R. 911-12].

On remand, a second hearing was held on August 20, 2015 [R. 1049]. The second ALJ rendered his decision on November 12, 2015, finding plaintiff was disabled as of March 21, 2014, but not before [R. 944, 967-68]. Exceptions were submitted to the Appeals Council, which, on July 12, 2016, affirmed the second ALJ's decision but remanded to determine plaintiff's eligibility for disability benefits prior to March 21, 2014 [R. 977]. (Docket No. 1, Compl. ¶ 14.) The Appeals Council remanded for the ALJ to determine work-related functional abilities plaintiff can perform (before March 2014) despite his limitations [R. 980; see R. 785]. On September 12, 2017 [R. 855], a third hearing was held but the third ALJ rendered an unfavorable decision on November 21, 2017 [R. 778] (id. ¶ 15). As noted later by the third ALJ [R. 785], the Appeals Council did not take issue with the medical findings of the prior ALJs but focused on the mental assessment [see R. 796]. The third ALJ thus adopted much of the medical findings of his predecessors [R. 788-99]. That ALJ found that plaintiff was not under a disability from June 15, 2010, through March 20, 2014, concluding that the medical record, plaintiff's admissions about his activity level and overall functioning support the finding that he can perform sedentary level of work [R. 799, 801]. Exceptions again were submitted to the

Appeals Council, which denied review on May 7, 2018 [R. 762], received by plaintiff on May 21, 2018 (id., Ex. A).

Plaintiff commenced this action on July 20, 2018 (id.). The parties moved for judgment on the pleadings (Docket Nos. 11, 14), and plaintiff duly replied (Docket No. 15). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 46-year-old at the time of the application with a high school education, last worked as a plumber's helper (heavy level of exertion) and warehouse worker (medium level) [R. 799]. The ALJ found that plaintiff could not perform any past relevant work [R. 799]. He initially contended that he was disabled as of the onset date of June 1, 2009 [R. 38, 778]. Plaintiff claims the following impairments deemed severe by the ALJ: major depressive disorder, bipolar disorder, personality disorder, anxiety, chronic kidney disease, left tibia plateau fracture status post total knee replacement, degenerative disc disease of the cervical, thoracic, and lumbar spine, and osteoarthritis of the right knee status post meniscectomy [R. 781]. The ALJ found that plaintiff's impairments did not meet or equal listed impairments in the Social Security regulations [R. 781-83]. For the mental health impairments, the third ALJ found that he did not meet the "Paragraph B" criteria for Listings 12.04, 12.06, or 12.08, finding plaintiff had mild limitation in understanding, remembering, or apply information; moderate limitations in interacting with others and with concentrating, persisting, or maintaining pace; and no more than mild limitation in adapting or managing oneself [R. 782-83]. The ALJ also found that plaintiff did not meet "Paragraph C" criteria [R. 783].

**MEDICAL AND VOCATIONAL EVIDENCE**

Plaintiff suffered a right ankle fracture in the 1980s, requiring surgery and causing him difficulty ever since [R. 264] (Docket No. 11, Pl. Memo. at 6).   He had a right knee injury in 1991 and had surgery to repair a tibial plateau fracture [R. 28, 755] (id.).   Plaintiff sought counseling in May to December 2008 for bipolar disorder and depression [R. 301-34] (id.).   On July 13, 2011, plaintiff was rear-ended while driving, suffering right knee and ankle injuries [R. 639, 660] (id. at 9).   Plaintiff sought medical treatment for these injuries.

Dr. Baskin examined plaintiff on August 19, 2010, opining that plaintiff had minimal to no limitation in his ability to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks with supervision [R. 438, 441, 786].

At issue here are medical opinions from several treating physicians and how the third ALJ considered them.   On September 27, 2010, Dr. Luis Melgar completed an employment assessment finding that plaintiff had functional limitations (very limited in lifting, carrying, pushing, pulling, and bending, and moderate limitations in walking, standing, sitting, climbing stairs) [R. 506-07, 789] (Docket No. 11, Pl. Memo. at 22).   The third ALJ gave some weight to this opinion, affording some weight to the mental health portion of the opinion, but giving greater weight to the more limited opinion of consultative examiner Dr. Renee Baskin, Ph.D. [R. 438, 786, 798].   That ALJ found that Dr. Melgar's was "somewhat vaguely articulated" but stated limits generally consistent with a sedentary residual capacity [R. 797].

Dr. Baskin examined plaintiff on August 19, 2010, and concluded that plaintiff had "minimal to no limitations in his ability to follow and understand simple directions and

instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks with supervision. He would have moderate limitations being able to make appropriate decisions, relate adequately with others and appropriately deal with stress" [R. 441, see R. 786]. Dr. Baskin also found that "the results of the present evaluation appear to be consistent with psychiatric problems and this may interfere with the claimant's ability to function on a daily basis. The claimant also appears to be compromised by lack of involvement in any type of consistent counseling" [R. 441, see R. 786]. The third ALJ considered Dr. Baskin's opinion and gave it great weight deeming it consistent with the overall record [R. 797].

In January 2012, plaintiff was treated by Dr. Cheryle Hart and the doctor made an employment assessment [R. 643, 791] and found that plaintiff was permanently disabled due to knee pain, bipolar disorder, and anxiety [R. 643] (see Docket No. 11, Pl. Memo. at 12-13, 21). She found that plaintiff was moderately limited in maintaining socially appropriate behavior without exhibiting behavior extremes but the doctor was unable to assess plaintiff's ability to function in a work setting at a consistent pace [R. 644, 791]. The ALJ then gave this opinion some weight because (like Dr. Melgar) it was consistent with a sedentary residual functional capacity and was given less weight for the mental health opinion than Dr. Baskin [R. 797, 798].

On February 6, 2012, plaintiff saw Dr. Graham Huckell's office for complaints of bilateral knee pain since July 13, 2011 [R. 646, 791]. The doctor opined that plaintiff was temporarily disabled due to bilateral knee pain [R. 650, 791]. The third ALJ gave this opinion some weight finding that it was not consistent with the residual functional capacity and the opinion reached the ultimate issue of disability reserved to the Commissioner [R. 798].

On March 2012 through July 2012, Dr. Michael Calabrese treated plaintiff and found that plaintiff was temporarily totally disabled due to the rear end automobile accident [R. 658, 664, 701, 709, 718, 725, 726, 791] (Docket No. 11, Pl. Memo. at 14, 20). The third ALJ gave these opinions some weight, but found that they lacked functional assessment, were conclusory, and reached the ultimate issue of disability [R. 798], giving due weight to limitations articulated in ancillary and contemporaneous reports but little weight to conclusory opinions [R. 798] (see Docket No. 14, Def. Memo. at 5-6).

On October 2, 2012, plaintiff was treated by Dr. Jesslyn Perry, and wrote a note stating that plaintiff was under her care and was "totally and permanently disabled because of his multiple medical conditions" and that plaintiff was unable to participate in gainful employment [R. 1686]. The third ALJ found this opinion was conclusory, from a general practitioner, and reached the ultimate issue of disability, giving the limitations articulated due weight but the conclusion little weight [R. 798].

On November 2013, plaintiff was treated by Dr. Bernard Beaupin who rendered an evaluation for an insurer [R. 1406, 1411, 794]. The third ALJ gave little weight to this opinion because it did not express plaintiff's functionality and is responsive to a program different from the Social Security system [R. 798].

In March and April 2015, plaintiff was treated by Dr. Raul Vazquez [R. 1493-588] (Docket No. 11, Pl. Memo. at 16, 24). The ALJ gave these opinions little weight because they were rendered after the closed period ending on June 2014 [R. 798].

Based upon this and other parts of the medical record and plaintiff's testimony, the ALJ found that plaintiff's statements were not consistent with the medical evidence and other

6

evidence in the record [R. 796].   The ALJ found the objective medical evidence did not support

the degree of limitation alleged [R. 796].   At Step Four, this ALJ found that plaintiff's

allegations of mental impairments and alleged limitations were inconsistent with the medical

evidence and some of plaintiff's testimony about his functioning [R. 796].   Plaintiff's bipolar

disorder has been stabilized by medication since October 2013 [R. 796, 1589, 1660 (May 22,

2014)].   Plaintiff also traveled to Florida to help his parents; the ALJ concluded that this

manifested his ability to engage in social interaction [R. 796].

The third ALJ found that plaintiff had a residual functional capacity to perform sedentary

work, with exceptions [R. 783].   The ALJ also found that plaintiff could sit for up to one hour

before requiring changes in position to standing or walking; he could occasionally climb ramps

and stairs, balance, stoop, kneel, crouch or crawl, but never climb ropes, ladders, or scaffolds; he

could no more than occasionally work around unprotected heights, and moving mechanical parts;

he could occasionally understand, remember and carry out complex instructions and tasks but

should work only in a low stress work environment further reflected by no supervisory duties, no

independent decision-making required, no strict production quotas or production rate pace, and

minimal changes in work routine and process; he could have had occasional interaction with

supervisors and co-workers and no or only incidental interaction with the general public; and he

could have had no team or tandem work with co-workers [R. 783].

The ALJ found that plaintiff was unable to perform past relevant work as a plumber's

helper or warehouse worker [R. 799].   With this capacity and the inability to perform plaintiff's

past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to

perform such sedentary occupations as waxer, table worker, and document preparer [R. 800].

As a result, the ALJ held that plaintiff was not disabled because plaintiff successfully adjusted to other work that existed in the national economy during the relevant period (June 2010 to March 2014) [R. 800-01].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.      General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to

obtain a precise description of the particular job duties which are likely to produce tension and

anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other

people, etc., in order to determine if the claimant's mental impairment is compatible with the

performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala,

37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to

return to past relevant work given the claimant's residual functional capacity. Washington,

supra, 37 F.3d at 1442.

## II. Medical Opinion, Pre-March 2017 Cases

Plaintiff's claims predate changes to the treating opinion regulations. The treating

physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927

(2017), such as this one. On March 27, 2017, the current version of the SSA regulations

eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R.

§§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y.

2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v.

Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31,

2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating

physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by
> clinical and laboratory techniques and is not inconsistent with other substantial
> evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec.,
> 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician
> rule). Additionally, "the Commissioner 'will always give good reasons'" for the
> weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32
> (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R.
> § 416.927(d)(2)). While an ALJ may give less than controlling weight to a
> treating physician's opinion, he or she must "comprehensively set forth [his or
> her] reasons for the weight assigned to a treating physician's opinion." Halloran,

362 F.3d at 33.   "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

III.     Calculation of Benefits

If plaintiff prevails, this Court either may remand for rehearing and further administrative proceedings or remand for the Commissioner to calculate benefits, 42 U.S.C. § 405(g).   For calculation of benefits, the ALJ's error must be so obvious that the Court in effect declares plaintiff to be disabled and remands to calculate amount of benefits, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) (Docket No. 11, Pl. Memo. at 29), or where there is no reason to conclude that additional evidence might support the Commissioner's denial of disability, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004).   Where there are gaps in the administrative record or when the ALJ has applied an improper legal standard, remand to develop the record is appropriate rather than for calculation of benefits, Butts, supra, 388 F.3d at 385; Parker, supra, 626 F.2d at 235.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage.   Specifically, plaintiff claims coverage from June 15, 2010 (the application date) through March 20, 2014 (the date disability was found to begin).   Plaintiff complains that the third ALJ failed to evaluate properly the treating source opinions (Docket No. 11, Pl. Memo. at 17-25).   The ALJ failed to evaluate the favorable

opinions of Drs. Michael Calabrese, Cheryle Hart, Luis Melgar, and other treating physicians.

He next contends that the ALJ substituted his medical judgment for that of treating physicians

(id. at 25-29).   The ALJ formulated the residual functional capacity without any explanation,

relying upon his lay opinion (id. at 27-28).   Finally, he argues that remand should be for

payment of benefits given that further evidentiary proceedings would serve no purpose and that

this case involves a closed period (id. at 29-30).

I.       Treating Sources' Opinions

The third ALJ properly evaluated the treating physicians' opinions, discounting

conclusory or ultimate opinions whether plaintiff is disabled, see 20 C.F.R. § 416.927(d); Snell

v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (Docket No. 14, Def. Memo. at 5-6) or those lacking

functional analysis.   This Court has disregarded defendant's post hoc rationalization that

Dr. Calabrese's findings were consistent with sedentary level of employment (see Docket

No. 15, Pl. Reply Memo. at 2; cf. Docket No. 14, Def. Memo. at 6).   The ALJ did find two

earlier opinions, of Drs. Melgar and Hart, were consistent with sedentary work [R. 797].

Plaintiff argues that he had medical appointments more than once per month, which the

vocational expert opined [R. 903] would not keep a similar claimant employed (Docket No. 11,

Pl. Memo. at 20).   This Court reviewed the record for the frequency of plaintiff's appointments

during the closed period of June 15, 2010, through March 20, 2014 (see id. at 6-16), and while

plaintiff had multiple appointments some months following his July 2011 accident, he did not

have more than one appointment per month that would be missing days on a regular basis to

make him unemployable.

Plaintiff also argues that the ALJ improperly weighed Dr. Vazquez's opinion [R. 1569, 1576] (Docket No. 11, Pl. Memo. at 24). These opinions were rendered <u>after</u> the closed period ended on March 20, 2014. Plaintiff was found to be disabled in 2015 when Dr. Vazquez opined. Those opinions made no reference to plaintiff's ability to work during the closed period of June 2010 to March 2014, despite Dr. Vazquez treating plaintiff from November 2013 (<u>see</u> <u>id.</u> at 16 & n. 4; R. 1493]) but not referring to plaintiff's disability from November 2013 to March 2014.

Plaintiff argues that the ALJ relied upon his lay opinion rather than the medical opinions of his treating physicians. Plaintiff, however, relies upon his doctor's ultimate opinions that he was disabled, the issue reserved to the Commissioner, 20 C.F.R. § 416.927(d); <u>Snell</u>, <u>supra</u>, 177 F.3d at 133 (Docket No. 14, Def. Memo. at 5-6). The ALJ had substantial evidence to support the residual functional capacity assessment for the closed period of June 2010 to March 2014 without resorting to the ALJ's untrained opinion. Plaintiff's motion on these grounds (Docket No. 11) is **denied**.

II.     Basis for Remand

Given the above disposition denying plaintiff's motion for remand, this Court need not determine whether such remand would be for further fact finding or for calculation of damages.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion (Docket No. 11) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 14) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of

42 U.S.C. § 405(g), <u>see</u> <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the

Court shall close this case.

So Ordered.


_s/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
January 7, 2020